# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> BLACK DOG CHICAGO, LLC, as successor by merger to BLACK DOG CHICAGO CORP., <br><br> Debtor. | Chapter 7 <br><br> Case No. 19-28245 <br><br> Honorable Janet S. Baer |

**PARENT PETROLEUM'S REPLY IN SUPPORT OF ITS OBJECTION TO THE CHAPTER 7 TRUSTEE'S MOTION TO SELL MEMBERSHIP INTERESTS <u>FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES</u>**

Creditor Parent Petroleum, Inc. ("<u>Parent</u>"), through its counsel, files this reply in support of its objection [Dkt No. 473] to Chapter 7 Trustee's Motion to Sell Membership Interests [Dkt Nos. 450, 451.] In support of its objection, Parent states the following:

## INTRODUCTION

1.  Contrary to the sale parties' assertions, the Court cannot approve the Sale Motion[1] because they cannot meet the heightened level of scrutiny for an insider transaction where there has been no marketing process, inadequate disclosures, and a facially insufficient purchase price for the proposed sale. Tellingly, having learned that Gauri's Plan proposes to sell minority interests in the Subsidiaries for $500,000 – which is 333% more than the proposed purchase price of $150,000 – the Trustee did not bother to file a response in support of the Sale Motion. Nor can the Court find Gauri is a good faith purchaser based on his admitted bad faith conduct in this

---

[1] All defined terms used herein, but not defined herein shall have the meanings given to them Parent's Objection. [Dkt No. 473.]

bankruptcy case[2] and with respect to the proposed sale.[3]

2.      The Court also cannot approve the Sale Motion because the proposed sale involves Gauri's individual assets, liabilities, and restructuring in his individual bankruptcy case, so much so that Gauri openly admits that the Sale Motion is the "centerpiece" of his individual Plan. Most importantly, the Sale Motion must be denied because it would harm Gauri's individual unsecured creditors by impermissibly end-running the absolute priority rule so that Gauri's Plan can pay his unsecured creditors (and Parent) nothing. For these reasons, and as explained below, the Court must deny the Sale Motion.

## ARGUMENT

### I. The Court Must Deny The Sale Motion Because It Does Not Withstand Heightened Scrutiny On Insider Transactions.

3.      The Court must deny the Sale Motion because the proposed transaction does not withstand even cursory scrutiny, let alone heightened scrutiny for an insider transaction. The sale parties incorrectly argue that a sale is not subject to heightened scrutiny when a chapter 7 trustee sells to an insider. On the contrary, courts impose heightened scrutiny for insider transactions involving chapter 7 trustees. *See In re Prototype Eng'g & Mfg.*, No. 2:17-bk-21018-RK, 2018 Bankr. LEXIS 635 (Bankr. C.D. Cal. Mar. 7, 2018); *see also In re Blixseth*, No. 09-60452-7, 2010 Bankr. LEXIS 585 (Bankr. D. Mont. Feb. 23, 2010). The Seventh Circuit also imposes a higher level of scrutiny for insider transactions. *Hower v. Molding Systems Engineering Corp.*, 445 F.3d 935, 939; (7th Cir. 2006) (citing *In re Firstmark Corp.* 46 F.3d 653, 656 (7th Cir. 1995) ("sale of a debtor's property to an insider is subject to close scrutiny")).

---

[2] Including the post-petition fraudulently obtained PPP loans and EIDL loans and falsified financial statements filed under oath.
[3] This includes Gauri's failure to disclose that the source of $150,000 purchase proceeds is a loan from Southwind's insiders.

2

A. <u>The Lack of Sale Process is Fatal to the Sale Motion</u>.

4. The sale parties repeatedly argue that the Sale Motion should be approved because Parent has not sought to submit a competing bid to buy the Subsidiaries. However, the sale parties never solicited competing bids for the interests in the Subsidiaries and never made their financial information available. Instead, as documented in the Chapter 7 Trustee's prior filings, Gauri and the Subsidiaries repeatedly failed to provide the Trustee with the information she was entitled to under this Court's prior orders. Therefore, Gauri has made it virtually impossible for Parent or potential third-party purchasers to submit competing bids for the Subsidiaries.[4]

5. Because there has been no marketing, insufficient due diligence disclosures, and no auction, the Court cannot make a finding of fair market value for the Subsidiaries. *In re Palmer*, No. 12-12211 (SMB), 2016 Bankr. LEXIS 4431, at *11 (Bankr. S.D. N.Y. Dec. 22, 2016) ("the best evidence of the fair market value is the price produced by a competitive auction."). Therefore, the Sale Motion must be denied. This is especially true for an insider sale, which is subject to higher scrutiny. *See In re P.D.M. Co.*, 523 B.R. 558, 559 (Bankr. W.D. Mich. 2015) (denying insider sale due to "absence of any effort to market the assets").

B. <u>The $150,000 Purchase Price Is Facially Inadequate</u>.

The Court cannot approve the sale of the Subsidiaries for $150,000 because Gauri admits in his Response that his Plan will sell a minority interest in the Subsidiaries for $500,000. Thus, the proposed sale price of $150,000 is facially inadequate because it is not the highest and best offer. *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) ("As a general matter, the trustee must demonstrate that the proposed sale price is the highest and best offer. . ."). Similarly, Southwind's willingness to guaranty PNC's $2.3 Million secured claim in conjunction

---

[4] In fact, the only information submitted to the Court by Subsidiaries regarding their financial condition indicated a precipitous increase in in value since Black Dog's bankruptcy filing. [Dkt. No. 406, pp. 3-4.]

3

with the proposed sale indicates value well in excess of $150,000.

      C.      <u>The Lack of Disclosure Precludes Court Approval</u>.

      6.      The sale parties do not contest the lack of relevant disclosures. As pointed out in Parent's Objection, the Court cannot approve the sale because of the failure to disclose: (a) the terms of the asset purchase agreement between the Trustee and Gauri for the proposed sale transaction; (b) the facts and circumstances surrounding the $150,000 loan from Southwind's insiders to the Gauris which money constitutes the purchase proceeds (which Gauri misrepresented to the Court as a "gift"); (c) the asset purchase agreement between Gauri and the insider entity buying the minority interest in the Subsidiaries for $500,000; and (d) complete and truthful financial documents to assess the fair market value of the Subsidiaries.[5] *See In re Engineering Products Co.*, 121 B.R. 246, 249 (Bankr. E.D. Wis. 1990) ("Of paramount importance is the existence of good faith — of full disclosure and fair dealing on the part of all interested parties.").

      D.      <u>The Court Cannot Find That Gauri Is A Good Faith Purchaser</u>.

      7.      Contrary to the sale parties' assertions, courts can and should consider an insider purchaser's entire course of conduct throughout the whole case to determine if they are purchasing in good faith. *See Transunion Risk & Alt. Data Solutions, Inc. v. Best One, Inc. (In re Tlfo, LLC)*, 572 B.R. 391, 433 (Bankr. S.D. Fla. 2016) ("The analysis of whether a purchaser of a debtor's assets acted in good faith is focused on the conduct of the purchaser in the course of the bankruptcy proceedings; this includes the purchaser's actions in preparation for and during the sale itself."); *Wortley v. Chrispus Venture Capital, LLC*, 763 F.3d 1341 (11th Cir. 2014) (unwinding good faith

---

[5] Southwind's statements in its response indicates that it believes the Subsidiaries have substantial value. *See* Dkt No. 481, ¶ 9 ("Southwind believes that the Subsidiaries can be profitable if operated as going concerns. This is the only reason why Southwind would agree to stick its neck out and guarantee over $2.3 million in debt to PNC and Heritage."). Based on Southwind's willingness to execute a guaranty for over $2.3 million in debt and to loan the $150,000 purchase proceeds to the Gauris, it seems highly likely that Southwind possesses undisclosed insider information on the "true value" of the Subsidiaries.

finding in 363 sale based on bad faith associated with filing of involuntary petition); *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 705 (Bankr. E.D. Cal. 1994) (finding that [p]arties [ ] lack good faith [under section 363(m)]when they fail to reveal material facts."). The Court cannot find Gauri is a good faith purchaser based on his repeated bad acts and misrepresentations during the case and in conjunction with the Sale Motion. Aside from the fraudulent PPP and EIDL loans Gauri obtained for the Debtor and Subsidiaries during the case, Gauri's failure to disclose the true source of the $150,000 purchase proceeds (which is a loan from Southwind's insiders) precludes a finding of good faith because it occurred directly in relation to the sale. Gauri's attempt to purchase the Subsidiaries for a fraction of their value is also evidence of bad faith.

  E. <u>The Court Should Deny the Sale Motion Because The Sale Will Not Benefit Black Dog's Unsecured Creditors</u>.

  8. The Sale Motion should be denied because the "attempted sale is in derogation of courts' universal recognition that 'the sale of a fully encumbered asset is generally prohibited.'" *Jubber v. Bird (In re Bird)*, 577 B.R. 365, 379 (B.A.P. 10th Cir. 2017) (collecting cases). The only "benefit" to the estate is the payment of the Chapter 7 Trustee's fees for administration of the secured creditors' collateral. While a "chapter 7 trustee may sell property under § 363, but such a sale is generally for the benefit of unsecured creditors and not for the benefit of secured creditors of the debtor." *Reeves v. Callaway*, 546 F. App'x 235, 15 (4th Cir. 2013); *Degiacomo v. Traverse (In re Traverse)*, 753 F.3d 19, 29 (1st Cir. 2014). Therefore, the Sale Motion should be denied.

**II. The Court Must Deny The Sale Motion Because It Requires Approval In Gauri's Bankruptcy And Would Harm His Creditors.**

  A. <u>The Sale Transaction Cannot Be Approved Because It Requires Approval In Gauri's Individual Bankruptcy Case</u>.

  9. The Court cannot approve the Sale Motion because Gauri admits in his Response that the proposed sale is the "centerpiece" of his individual Chapter 11 restructuring and involves

5

Gauri's individual assets, liabilities, and income. As stated in Gauri's Response:

> the sale is the centerpiece the Gauri Chapter 11 reorganization case, a complicated multi-party restructuring of the PNC and Heritage debt at the Subsidiaries, the full payment of the SBA's administrative secured claim, and preservation of the Subsidiaries businesses, which will serve as the source of repayment of the Subsidiaries creditors and Gauri's personal creditors under Gauri's plan of reorganization.

[Dkt. No. 478.].

10.  In addition, to the extent the sale parties assert that the $150,000 purchase proceeds is consideration from Gauri, these funds are property of Gauri's individual bankruptcy estate pursuant to Sections 541(a) and 1115(a) and use of such funds requires approval in Gauri's individual bankruptcy. *In re McDonald Bros. Const., Inc.*, 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990). Moreover, the sale presumably requires Gauri to execute a purchase contract, which also requires court approval. *Northview Mtrs., Inc. v. Chrysler Mtrs. Corp.*, 186 F.3d 346, 351 (3d Cir. 1999) (citation omitted); *see also In re Tex. Wyo. Drilling, Inc.*, 486 B.R. 746, 755 (Bankr. N.D. Tex. 2013) (stating that major business decisions are outside of the ordinary course under Section 363(b)).

11.  Further, the loan documents include a "Consent of the Guarantor," which notwithstanding the arguments of the sale parties, appears to require both of the previous guarantors, including Gauri personally, to execute the document. [Dkt No. 465, Exhibit A, p. 7.] Specifically, the consent requires that:

> <u>Each of the undersigned guarantors</u> (jointly and severally if more than one, the "Guarantor") consents to the provisions of the foregoing Amendment and all prior amendments (if any) and confirms and agrees that: (a) the Guarantor's obligations under its Guaranty Agreement dated as of September 19, 2017 (collectively if more than one, the "Guaranty"), relating to the Obligations mentioned in the Amendment, shall be unimpaired by the Amendment. . .

*Id.* (emphasis added). The sale parties argue that "while the loan amendment documents do contain a guarantor consent, that consent does not require Mr. Gauri to execute it individually. He

Case 19-28245   Doc 484   Filed 10/29/21   Entered 10/29/21 13:17:24   Desc Main
Document      Page 7 of 9

is not a party to the loan amendment documents in his individual capacity." [Dkt No. 477, ¶ 30.] This is simply contrary to the terms of the Consent of Guarantor, which provides for the execution by both guarantors (Gauri and Commercial Ventures). Therefore, without approval in Gauri's individual bankruptcy, the Sale Motion cannot be approved.

    B.    <u>The Court Should Not Approve The Sale Motion Because It Would Harm Gauri's Creditors.</u>

12. The Court should not approve the proposed transaction because it, and Gauri's Plan, are designed to siphon off profits from the Subsidiaries and leave Gauri's unsecured creditors with nothing. In contrast, if PNC lifted the stay to conduct an Article 9 UCC foreclosure sale to Gauri, then all of the liens held by PNC, Heritage, and Southwind would be extinguished. This would allow the Subsidiaries to distribute additional profits to Gauri to pay creditors in his individual bankruptcy case. In attempting to challenge this, the sale parties rely on a false premise - namely that an Article 9 UCC sale would only result in a liquidation of the Subsidiaries. This is simply incorrect as PNC could sell the Membership Interests in the Subsidiaries to Gauri in an Article 9 foreclosure permitting the Subsidiaries to emerge from the sale without any secured debt.

    C.    <u>Gauri's Plan Is Not Confirmable Because The New Value Exception Does Not Apply</u>.

13. The sale parties also incorrectly argue that the new value exception to the absolute priority rule applies and allows Gauri to retain his assets and the interests in the Subsidiaries under his Plan without payments to dissenting creditors. The sale parties are wrong for three reasons. First, the new value exception does not apply because the $150,000 is paid to the Black Dog estate, not the Gauri estate. *Bank Am. Nat. Tr. Sav. v. 203 N. Lasalle*, 526 U.S. 434, 466 (1999) (stating that the new value must be "equivalent or greater value than its interest in the reorganized venture."). Second, the funds are being paid with respect to the Chapter 7 Trustee's proposed Section 363 motion, not Gauri's plan. *See In re Castleton Plaza, LP*, 707 F.3d 821 (7th

Cir. 2013) (stating that new value must be contributed under a "plan of reorganization"). Third, Gauri's Plan violates the absolute priority rule because it provides him the exclusive opportunity to retain his assets, including the Membership Interests, without satisfying the market scrutiny requirement. *See 203 N. Lasalle*, 526 U.S. 434 (1999) (finding a partner's exclusive opportunity to acquire equity of reorganized debtor violates the absolute priority rule); *see also In re Castleton Plaza, LP*, 707 F.3d 821 (7th Cir. 2013). Therefore, Gauri's Plan is not confirmable and the Sale Motion is an impermissible attempt to end run the absolute priority run by converting Gauri's interests in the Subsidiaries from pre-petition assets into post-petition assets to avoid paying Parent anything.

### III. Parent Has Standing to Object to the Sale Motion.

14. Finally, Gauri incorrectly argues that Parent lacks standing and purports to rely on – *In re Abengoa Bioenergy Biomass of Kan., LLC*, No. 16-10446, 2018 Bankr. LEXIS 1100 (Bankr. D. Kan. Apr. 10, 2018) – in asserting that "out of money unsecured creditor with no prospect of distribution has no standing to object to trustee's proposed transaction." [Dkt. No. 478, p. 3.] This assertion misstates the holding in *Abengoa* and, more importantly, is contrary to the Bankruptcy Code and controlling Seventh Circuit case law. *Abengoa* did not involve a Section 363 sale, but instead dealt with a post-confirmation objection to a proposed Rule 9019 compromise by a creditor who was not a beneficiary of the liquidating trust. *Abengoa*, No. 16-10446, at *9-10 (Bankr. D. Kan. Apr. 10, 2018). Moreover, Bankruptcy Code section 1109(b) expressly grants standing to all parties in interest, including creditors, to be heard on all issues in Chapter 11 cases. Further, Seventh Circuit case law provides that "everyone with a claim to the res [the debtor's assets] has a right to be heard before the res is disposed of since that disposition will extinguish all such claims." *In re CP Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (citing *In*

8

*re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).[6]

## CONCLUSION

15. For the reasons stated above, the Court should deny the Sale Motion.

**DATED: October 29, 2021**          Respectfully submitted,

PARENT PETROLEUM INC.


By: /s/ *James B. Sowka*
    One of Its Attorneys

James B. Sowka (IL Bar No. 6291998)
jsowka@seyfarth.com
Andrew R. Medearis (IL Bar No. 6337979)
amedearis@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

---

[6] On the contrary, Gauri and Southwind lack standing to file responses supporting the Sale Motion because neither are creditors or equity security holders of Black Dog. *See In re Pantazelos*, No. 15bk08916, 2016 Bankr. LEXIS 1883, at *11 (Bankr. N.D. Ill. Apr. 29, 2016) (finding that a non-creditor lacked standing to prosecute a motion).